## PFEIFFER v. UNITED STATES.

### No. 7122.

Circuit Court of Appeals, Seventh Circuit.

July 10, 1940.

Harold G. Baker, Ralph Lesemann, Leigh M. Kagy, and Paul Wagner, all of East St. Louis, Ill., for appellee.

Julius C. Martin, of Washington, D. C., Arthur Roe, U. S. Atty., of Vandalia, Ill., and Fendall Marbury, Special Atty., Dep't. of Justice, and Thomas E. Walsh, Atty., Dep't. of Justice, both of Washington, D. C., for appellant.

Before EVANS, TREANOR, and KERNER, Circuit Judges.

TREANOR, Circuit Judge.

This action was brought to recover total and permanent disability benefits under a contract of United States Government life insurance. The trial judge stated findings of fact and conclusions of law in favor of plaintiff and rendered judgment in conformity therewith. Defendant claims that the trial court erred in refusing to grant its motion for judgment which was made at the close of the evidence. In his complaint the plaintiff alleged that a five-year convertible term insurance policy in the sum of $5,000 had matured by reason of total and permanent disability which was alleged to have occurred on November 19, 1929. The United States denied that the contract had matured, as alleged, and this issue was tried before the Judge of the District Court after waiver of jury.

It is the Government's contention that the evidence did not support the finding that the plaintiff was totally and permanently disabled within the meaning of the war risk insurance contract on October 18, 1930. The evidence made an unusually strong case of total and permanent disability as of the date alleged unless the probative value of the evidence tending to show the permanency of the disability is destroyed by the plaintiff's alleged failure to take treatment.

Defendant urges that in the instant case "proof of permanence was lacking because it was not shown that the nervous condition, on which the plaintiff relied, would not have yielded to proper treatment". One of plaintiff's witnesses testified that if he "could be put in the proper attitude of mind he wouldn't have any of these sicknesses;" and one of defendant's doctors expressed the opinion that psychoneurosis found on examination in June, 1936, could have been cured at that date if proper treatment had been undertaken. Both of plaintiff's medical witnesses expressed the opinion that the condition was permanent.

But there is no evidence which required the trial judge to find that the plaintiff neglected to take treatments; and there is no evidence in the record of any offer on the part of the defendant or the Veterans' Bureau to offer any treatment. The plaintiff at no time refused to take any treatment offered by the defendant. On the other hand, there is evidence that he was discharged from the army on February 27, 1919, and that on June 2, 1919, he was examined by Dr. Grover H. Poos, and that

until November 23, 1921, Dr. Poos saw him from time to time for purposes of treatment. As a result of Dr. Poos' recommendation the plaintiff took vocational training in Chicago, Illinois. Dr. Poos testified that he tried to get him interested in doing things around his home and recommended that marriage might be a benefit to him. Plaintiff testified that he was treated in Chicago by Dr. Brennan while attending vocational training and from 1928 or 1929 up to the time of trial by Dr. Carter who treated him for his nervous system. He received treatment from Dr. Carter off and on for twelve years.

The facts disclose that the plaintiff and eleven other men were in a tank headed toward the enemy lines on September 29, 1918, when a shell pierced the tank and exploded with terrific force inside the tank, killing six and injuring the other six men. The evidence clearly justified the conclusion that the plaintiff had at no time recovered from the terrific effects of the shell shock, and that he suffered continuously from nervousness, insomnia and nausea. Just before the shell pierced the tank plaintiff was wounded in the hand by an anti-tank gun bullet; and after he crawled from the tank he was confined to a shell hole or to the front line trenches for sometime before receiving medical aid. Thereafter he was unable to perform any military services. There was substantial evidence to support an inference by the trial court that the physical wounds, the mental and nervous shock sustained by the explosion, exposure to the elements, and danger from shell fire could produce a permanent physical disorder in his nervous system and a derangement of his mind. In the face of the fact that there was no evidence of actual neglect or refusal to take treatment by the plaintiff, we are of the opinion that the somewhat meager evidence that permanence of disability might have been averted by treatment cannot be given the effect of overcoming the showing of permanent disability. The inconclusiveness of such speculative testimony is indicated by the answers of Dr. Carter. He stated that if plaintiff "could be put in the proper attitude of mind he wouldn't have any of these sicknesses." But he further stated: "That's his sickness, imagination." And the Doctor further stated that if plaintiff's ideas as to the symptoms could be "cleared up his disability of nervousness would be removed." But the determinative factor is

that the Court was justified on the evidence in concluding that the plaintiff could not be "put in the proper attitude of mind." No doubt many permanent conditions of mental disorder which constitute total disability could be removed if it were possible to put the afflicted person "in the proper attitude of mind."

We conclude that there was substantial evidence to support the finding of the trial court that the plaintiff was totally and permanently disabled, and we further conclude that there is nothing in the record which would justify our holding, as a matter of law, that the permanency of plaintiff's condition could have been avoided by treatment; and even if there was such evidence, the record as it comes to us contains nothing that would justify our holding that the permanency of the disability should be charged, as a matter of law, to the plaintiff's failure to take treatment.

The judgment of the District Court is affirmed.